■ In the Matter of the Estate of SOPHIE FRIEDGOOD, Deceased. JACK COOK, as Administrator of the Estate of SOPHIE FRIEDGOOD, Deceased, Respondent;

CHARLES FRIEDGOOD, Appellant. — In a proceeding to resolve a disputed claim regarding the ownership of the proceeds of the sale of a Florida condominium, the appeal is from stated portions of a decree of the Surrogate's Court, Nassau County (Bennett, S., on the decision; Delin, S., on the decree), dated September 4, 1980, which, *inter alia,* adjudged that the condominium was owned by Sophie Friedgood at the time of her death and that the proceeds from the sale thereof were the property of her estate. Decree affirmed insofar as appealed from, without costs or disbursements. Sophie Friedgood died on June 18, 1975. Her surviving spouse, appellant Charles Friedgood, was convicted of her murder and of grand larceny (the theft of her personalty) and was sentenced in 1977 to a prison term of 25 years to life for the murder and a concurrent term on the grand larceny conviction. Friedgood subsequently claimed that he was the owner of a condominium that was purchased by decedent in February, 1974 and transferred by her to the 4384 Holding Corporation, without consideration, the following year. Friedgood maintained that the funds used to purchase the condominium (almost $49,000) were traceable to some $140,000 paid to Sochar Realty Corp., of which he was at least a 50% shareholder, if not the sole shareholder; and that the money was paid in satisfaction of debts owed to Sochar Realty and personally to himself. In holding that Friedgood had not established his claim, the Surrogate stated that although there was conflicting documentary information submitted regarding the ownership of Sochar Realty, "the surviving spouse did not prove to the satisfaction of the court that he was a shareholder in Sochar Realty on or about February 25, 1974". We affirm. The evidence established that Sochar Realty Corp. was formed by Sophie and Charles Friedgood in 1966. Friedgood introduced a certificate dated March 11, 1966 showing him to be the owner of 50 shares of the stock of the corporation. The estate produced no stock certificate for decedent. On January 9, 1974 decedent opened a bank account in the name of Sochar Realty with the proceeds of a matured certificate of deposit (which was also in the name of the corporation). The money used to purchase the certificate of deposit was a check payable to "Sochar Realty Corp. or Charles Friedgood and Sophie Friedgood", dated August 8, 1973 and indorsed by both Friedgoods. On January 15, 1974 decedent withdrew $50,000 from the Sochar account by check payable to her and deposited it in her own account. On January 24, 1974 she withdrew another $50,000, also by check payable to her personally, which she deposited in her account. A check from that personal account, dated February 21, 1974, was used to purchase the condominium on February 25, 1974. At about the same time, that is on January 23, 1974 and February 8, 1974, decedent verified an answer and an amended answer in a lawsuit in which she, Charles Friedgood and Sochar Realty were the named defendants. Each of these papers states that "SOPHIE FRIEDGOOD is the sole stockholder of SOCHAR REALTY CORP". In an unsigned paper titled, "Statement of Mrs. Sophie Friedgood taken on January 16, 1974", it is stated in describing past financial ventures which had given rise to the lawsuit referred to above, that "Dr. and Mrs. Friedgood owned all the stock in Sochar". The answer and amended answer state the fact of sole ownership of Sochar in the present tense; the unsigned statement speaks of the joint ownership in the past tense. On this state of the proof, we agree with the Surrogate that Charles Friedgood did not establish that at the time of the purchase of the condominium he was a shareholder in Sochar Realty. That he was a shareholder at some earlier time is not in doubt. But the verified answer and amended answer make equally clear that decedent, as early as January 23, 1974, asserted sole ownership of the corporation and acted accordingly. Charles Friedgood also contends that the funds which were received by Sochar Realty in August, 1973 (and with which Sochar purchased the certificate of deposit) were in part to satisfy debts owing not only to Sochar but to Friedgood

personally as well. Although there is evidence that the corporation (YMF) which paid the check to Sochar Realty Corp. owed money to both Friedgood and to Sochar, there is no proof that the check drawn payable to Sochar was, in fact, also in satisfaction of the money owed to Friedgood. The list of those who were owed money by the YMF Corporation does not correspond to the payees of the checks given by YMF, which were introduced into evidence by Friedgood, nor to decedent's statement of what payments the checks represented. The inference Friedgood draws that his personal debt was satisfied by the Sochar Realty check is not supported by the record. We have examined appellant's remaining contentions and find them also to be without merit. Titone, J. P., Gibbons, Gulotta and Margett, JJ., concur.